UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | Case No.   21-33581 |
| **DIOGU KALU DIOGU II,** | § | |
| | § | |
| Debtor. | § | Chapter 13 |
| | § | |

## MOTION TO CONVERT TO CHAPTER 7

**THIS MOTION SEEKS AND ORDER THAT MAY ADVERSELY AFFECT YOU.  IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING.  UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**There will be a hearing on this Motion on February 15, 2022, at 9:00 am at the U.S. Courthouse, 515 Rusk, Courtroom # 400, Houston, Texas.  You may attend virtually or in person.  To attend virtually, you must connect by separate audio and video connections. The audio connection is 832.917.1510.   The Code is 205691. The video connection is at gotomeeting.com.  The Code is JudgeJones.**

TO THE HONORABLE U.S. BANKRUPTCY JUDGE:

COMES NOW Eddie M. Krenek, Tricia Krenek, David Melanson, and Denise Robbins (collectively, "Movants") requesting that this case be converted for cause pursuant to 11 U.S.C. § 1307(c), and would respectfully show the Court as follows:

### I.   SUMMARY

1. Debtor is an attorney licensed to practice law in the State of Texas.  He has been repeatedly sanctioned by multiple courts.  He has been designated a vexatious *pro se* litigant by the Fort Bend County District Court.  He is the subject a pending disciplinary action by the State

Bar of Texas' Commission for Lawyer Discipline. He filed this Chapter 13 bankruptcy on the eve of foreclosure on the single piece of real property he disclosed in his Schedules.

2. Debtor's actions before and after the Petition Date reflect his bad faith in filing this bankruptcy case. Among other things, Debtor filed the Petition to frustrate state-court litigation and pending creditor actions in a continued attempt to hinder, defraud, and delay creditors; he failed to disclose numerous assets and details about his financial affairs; he shipped assets overseas; and filed a proposed plan remarkable for its deficiencies; and he does not meet the eligibility requirements for Chapter 13. Debtor's bad faith warrants converting this case to one under Chapter 7 of Title 11 of the United States Code. A Chapter 7 trustee is desperately needed to investigate the Debtor's financial condition, uncover the extent of his misrepresentations, assets, and transfers, and to gather the Debtor's assets and conduct an orderly liquidation of the Debtor's estate.

## II. JURISDICTION AND VENUE

3. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief requested are 11 U.S.C. §§ 105(a), 109(e), and 1307(c).

## III. BACKGROUND

4. Movants hold final judgments and sanction orders against Debtor totaling $221,676. True and correct copies of these judgments and orders (along with supporting documents) are attached hereto as **Exhibits 1-4**. These judgments and orders were entered in two lawsuits that Debtor pursued against Movants that were dismissed as meritless under Texas' Anti-SLAPP laws. In one of the proceedings, the trial court made findings of fact that include the finding that Diogu

"to not be credible or reliable in his legal or factual assertions, with such arguments and assertion of legal authorities to lack credibility and reliability." See **Exhibit 4** (highlighted finding #37. Debtor's attempts to appeal these judgments and orders were rejected. See **Exhibit 4-A**. They are final and unappealable.

5. Debtor is a licensed Texas attorney. On May 27, 2021, after two days of evidentiary hearings and testimony, he was found to be a vexatious *pro se* litigant by the 434th Judicial District Court in Fort Bend County, Texas (Associate Judge). See **Exhibit 5**. Upon Debtor's appeal of this finding to the District Judge of the 434th Judicial District Court, the District Judge conducted a de novo hearing after which Debtor was again found and confirmed to be a vexatious *pro se* litigant. See **Exhibit 5-A**. Debtor is currently the respondent in a disciplinary lawsuit filed by the State Bar of Texas' Commission for Lawyer Discipline in Fort Bend County alleging that Debtor (1) made a false declaration under penalty of perjury in a *pro se* lawsuit when he denied owning any real estate; (2) filed a frivolous motion to disqualify judges; and (3) forged his client's signature on a contingent fee agreement. See **Exhibit 6 at 2-6**.

6. On November 2, 2021 (the "Petition Date"), Debtor initiated this bankruptcy case by filing a *pro se* Chapter 13 petition.

7. On November 10, 2021, Debtor filed his Statement of Financial Affairs [Dkt. No. 10]. That document was strikingly lacking in pertinent information.

8. Also on November 10, 2021, Debtor filed his statement of current monthly income and calculation of commitment period [Dkt. No. 11] (the "Statement of Income"). The Statement of Income claimed that Debtor's total average monthly income for the six months leading up to the Petition Date was $4,275.00, consisting of $1,390.00 in pension or retirement income and $2,885.00 in net monthly income from a business or profession.

9. On November 12, 2021, Debtor filed a proposed Chapter 13 plan [Dkt. No. 16].

10. Also on November 12, 2021, Debtor filed a series of amendments to his Schedules [Dkt. Nos. 17 and 18, 21], an amended Chapter 13 plan [Dkt. No. 19], and an amended Statement of Current Monthly Income [Dkt. No. 20].

11. On November 14, 2021, Debtor filed an amended Chapter 13 plan [Dkt. No. 22].

12. On November 17, 2021, creditor Lakeland West Capital 41, LLC ("Lakeland West") filed its motion requesting relief from the automatic stay [Dkt. No. 28] (the "Lift Stay Motion"). As described in the Lift Stay Motion, Debtor has been involved in a series of unsuccessful lawsuits in state and federal courts attempting to hinder Lakeland West from foreclosing on real property belonging to Debtor. As described in the Lift Stay Motion, Debtor had failed to disclose in this bankruptcy case four automobiles, at least eight pieces of real property, and his membership interest in an LLC formed on September 22, 2021. Exhibits J, K, L, and U to the Lift Stay Motion are incorporated herein by reference.

13. On November 14, 2021, Debtor filed his Uniform Plan and Motion for Valuation of Collateral [Dkt. No. 22] ("Debtor's Proposed Plan"). So far as Movants can discern, Debtor's Proposed Plan attempts to address one mortgage and an IRS claim but includes no details relating to any other secured creditors, priority creditors, and/or non-priority creditors. Moreover, it provides a value for the mortgage that is only approximately half of the value that the mortgage holder places on its claim.

14. On November 30, 2021, Fort Bend County filed an objection [Dkt. No. 35] (the "Objection") to Debtor's Proposed Plan. The Objection notes that Debtor owes Fort Bend County $316,316.64 for ad valorem property taxes and that Fort Bend County views its claim as being secured. Assuming their truth, the allegations of the Objection in and of themselves make Debtor's

Proposed Plan unconfirmable. Debtor's utter failure to provide for Fort Bend County's claim underscores his bad faith intentions in filing this bankruptcy case.

15. On December 10, 2021, the Debtor filed his amended response (the "<u>Amended Response</u>") to the Lift Stay Motion. Among other things, Debtor took the unusual and facially suspect positions that Lakeland West is not a secured creditor and lacks standing. The Amended Response accurately reflects the vexatious *pro se* litigation tactics that Debtor consistently employs and for which he was previously found to have engaged in frivolous filings and for which he was declared a vexatious *pro se* litigant.

16. On December 17, 2021, Debtor filed amendments to his Schedules A and B [Dkt. No. 51]. In those amendments, Debtor included the vehicles that he had previously failed to disclose that the Lift Stay Motion had identified. The exhibits suggest that Debtor shipped several of those vehicles overseas, including a Porsche and a Hummer, and Debtor claims they were therefore outside this Court's jurisdiction. (At his subsequent 341 meeting, Debtor testified that he paid $6,000.00 to ship these vehicles to Africa.) While Debtor attempts to suggest that the vehicles he shipped to Africa were not driveable and of no value, Texas Department of Motor Vehicle records reflect that Debtor had title registrations renewed in July of 2021 (for 2005 Hummer and 2005 Mercedes Benz) and on October 20, 2021 (for the 2003 Hummer), days before Debtor's bankruptcy filing. See **Exhibit 7**. Inoperable vehicles would not pass inspection, a requirement for vehicle registrations to be renewed.

17. Debtor subsequently retained counsel. On January 14, 2022, less than two hours before his 341 meeting, Debtor filed amendments to his Schedules and SOFA [Dkt. No. 61] (the "<u>Current Version of Schedules and SOFA</u>"). The Current Version of Schedules and SOFA values the Fort Bend County secured claim at $14,085.22 and lists the following unsecured debts:

5

| Creditor | Nature of Debt | Amount |
|---|---|---|
| • CACH, LLC | credit card | $9,414.36 |
| • Educational Credit Mgt. | Student Loan | $191,817.82 |
| • Fulshear Katy Road Series | "new trial pending" | $13,250.00 |
| • Internal Revenue Service | 1040 taxes | $39,000.00 |
| • P. Yao | Judgment | $63,000.00 |
| • Tricia and Ed Krenek, Melanson and Robbins | Judgment | $221,676.00 |

18. A cursory review of these debts shows that Debtor has noncontingent, liquidated, unsecured debts exceeding the statutory cap of $419,275.00. *See* 11 U.S.C. § 109(e).

19. Concurrently with the filing of the Current Schedules and SOFA, Debtor filed an amended proposed chapter 13 plan [Dkt. No. 62] (the "Current Proposed Chapter 13 Plan"). Among other things, the Current Proposed Chapter 13 Plan appears to provide for Fort Bend County to receive only $14,085.22 on its claim, with roughly 25% distribution to unsecured creditors. The Current Proposed Chapter 13 Plan is predicated on Debtor selling the real property that he claims as his homestead. Although Debtor claims that after paying secured creditors he would use the remaining proceeds to purchase a new homestead, so far as Movants can find the plan contains no provision requiring Debtor to turn over any excess proceeds not used to purchase a homestead within the six months required under Texas law in order to remain exempt. Furthermore, the Current Proposed Chapter 13 Plan provides no insight as to how a debtor who has provided virtually no details as to his actual income would be able to fund plan payments.

20. Also on January 14, 2022, Debtor's 341 meeting was conducted. After averring that his Amended Schedules and SOFA were complete and accurate, when asked various questions by

creditors present Debtor appeared to make several statements contradictory to those sworn to in his Schedules and SOFA.[1] At the 341 meeting, counsel for the Chapter 13 Trustee requested that Debtor's counsel provide copies of various documents, including bank account statements and tax returns.

21. On January 18, 2022, Fort Bend County filed an objection to plan confirmation [Dkt. No. 64] challenging Debtor's attempt to pay just $14,085.22 on its $316,316.64 ad valorem tax lien.

22. Also on January 18, 2022, the Chapter 13 Trustee filed an Objection to Confirmation of Chapter 13 Plan and Motion to Dismiss or Convert to Chapter 7 [Dkt. No. 65]. Among other things, the Chapter 13 Trustee objects that Debtor had not provided certain requested documents relating to his financial affairs, was not providing for payment in full of secured and priority claims, and was presenting an infeasible plan.

23. Fort Bend County Appraisal District records list Debtor as owner of record of multiple pieces of real property not listed in his bankruptcy filings. *See* **Exhibit 8.** Fort Bend County Official Deed Records confirm Debtor's ownership of real property not listed in his bankruptcy filings, including real property Debtor himself partitioned and received by Partition Deed Debtor signed in 2019. See **Exhibit 9.** In yet another lawsuit Debtor filed against Movants on July 28, 2021, Debtor admits in a verified petition (under penalty of perjury) that he "acquired another 4.13-acre property on Fulshear-Katy Road worth more than $619,000.00 to build his new home…." See **Exhibit 10, p. 6**. Debtor also admitted (again under penalty of perjury) that "Plaintiff [Debtor] had other nonexempt real property…. See **Exhibit 10**, **p. 7**. None of these properties are listed in Debtor's bankruptcy filings.

---

[1] For instance, Debtor asserted that he disputed a debt that his Schedules identified as undisputed.

### III.  ARGUMENT AND LAW

24.     "[T]he purpose of the bankruptcy code is to afford the honest but unfortunate debtor a fresh start, not to shield those who abuse the bankruptcy process in order to avoid paying their debts." In re Molitor, 76 F.3d 218 (8th Cir. 1996).

25.     Section 1307(c) provides that "on request of a party in interest ... the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause[.]" 11 U.S.C. § 1307(c). "Cause" includes filing a bankruptcy petition in bad faith. In re Nassar, 216 B.R. 606, 608 (Bankr. S.D. Tex. 1998) "The bad faith determination focuses on the totality of the circumstances, including: (1) whether the debtor has stated his debts and expenses accurately; (2) whether he has made any fraudulent representation to mislead the bankruptcy court; and (3) whether he has unfairly manipulated the bankruptcy code. Id. Failing to qualify as a Chapter 13 debtor due to the debt limits contained in Section 109(e) is likewise cause to convert a petition to Chapter 7.

26.     Filing misleading and inaccurate schedules to conceal assets from creditors also constitutes cause for conversion pursuant to 11 U.S.C. § 1307(c). In re Jacobsen, 609 F.3d 647, 662 (5th Cir. 2010). In determining whether a debtor has acted in bad faith such as would justify conversion or dismissal, the Court should consider the best interest of creditors and the bankruptcy estate. *See* id. (approving bankruptcy court's discretionary decision to convert Chapter 13 case to one under Chapter 7).

27.     Debtor's bad faith is shown in each step he has made in this bankruptcy case. Debtor has failed to disclose numerous assets; he amended his schedules and SOFA multiple times in response to creditors noting material deficiencies which would have inured to Debtor's benefit and has purposefully mischaracterized debt. The Educational Credit Mgt. and IRS debts are not

listed as being contingent or unliquidated, and yet at his 341 meeting Debtor attempted a garbled effort to concoct some sort of dispute with those debts. The "P. Yao" debt (the Final Judgment reflects the judgment creditor to be Yaowapa Ratana Aporn; that Final Judgment is attached as **Exhibit 11**) and Tricia and Ed Krenek, Melanson, Robbins debts are listed as contingent and disputed, but identified, accurately, as arising out of judgments. Judgment debts are not contingent debts and Debtor's identification of them as such further reflects his bad faith efforts to game the system. *See* In re Thalmann, 469 B.R. 677, 682 (Bankr. S.D. Tex. 2012) ("Bad faith exists where a debtor lists a final judgment as a disputed debt in his schedules.").[2]

28.  Accordingly, at a minimum, Debtor's undisputedly noncontingent, liquidated unsecured debts are as follows:

- Educational Credit Mgt.         Student Loan        $191,817.82
- Internal Revenue Service        1040 taxes          $39,000.00
- P. Yao                          Judgment            $63,000.00
- Tricia and Ed Krenek,
  Melanson and Robbins            Judgment            $221,676.00

                                  **TOTAL:**         **$515,493.82**

29.  Moreover, based upon Movants' extensive history dealing with Debtor in state court litigation, Debtor likely has engaged in or attempted to engage in various pre-bankruptcy asset transfers that he has not disclosed in this bankruptcy case. This is borne out by Debtor's admissions in the exhibits to Dkt. No. 51 and at his 341 meeting that he has moved assets to

---

[2] Debtor pursued multiple challenges to the judgments and orders entered Movants' favor and lost them all. *See Diogu Law Firm PLLC v. Melanson*, No. 14-18-0153-CV, 2020 WL 6142902 (Tex. App. – Houston [14th Dist.] Oct. 20, 2020, pet. denied) (affirming judgment); *Advanced Technology Transfer and Intellectual Property Group LLC v. Krenek*, No. 14-19-00459-CV, 2021 WL 2325104 (Tex. App. – Houston [14th Dist.] June 8, 2021, no pet.) (affirming judgment); *In re Diogu Law Firm PLLC*, No. 14-18-00878-CV, 2018 WL 4997322 (Tex. App. – Houston [14th Dist.] Oct. 16, 2018, orig. proceeding) (denying mandamus); *In re Diogu*, No. 20-0836 (Tex. Oct. 30, 2020) (denying mandamus).

Nigeria; the fact that Fort Bend County Appraisal District records list Debtor as owner of record of multiple pieces of real property not listed in his bankruptcy filings; and the fact that Debtor in recent verified filings in State Court judicially admitted owning other real property not listed in his bankruptcy filings.

30. Debtor is not the quintessential honest but unfortunate debtor for whom the Bankruptcy Code was designed, but rather the atypical and extraordinary debtor whose bad faith actions justify conversion to Chapter 7 for the benefit of the creditors and the bankruptcy estate. Where, as here, it appears that Debtor has substantial non-disclosed assets, Movants submit that it is in the best interests of the creditors and the bankruptcy estate that this case be converted to one under Chapter 7 so that a trustee may be appointed who can take control over administration of the assets (and recovery of the assets) of the bankruptcy estate.

31. Moreover, Debtor's lack of candor in his disclosures in this bankruptcy court along with his failure to produce all requested/required documents (tax returns, banking records) underscore the fact that Debtor's purpose in filing this bankruptcy case was not to reorganize and treat honestly and deal fairly with his creditors but rather to forestall foreclosure by Lakeland West and to hinder, defraud, and delay his creditors. Indeed, at least based upon Debtor's disclosures (which Movants believe may be replete with omissions of creditors), Debtor has a remarkably short list of creditors. Taken in conjunction with the noticeably bare bones chapter 13 plan proposed by Debtor, it is apparent that Debtor does not take his obligation as a debtor under the Bankruptcy Code seriously. This conclusion is further solidified by Debtor's improper and baseless attempt to skirt the eligibility requirements for Chapter 13 by falsely identifying debts owed to multiple judgment creditors as being contingent, disputed debts.

32. Debtor has voluntarily invoked the expansive protections contained within the United States Bankruptcy Code. The toll required to access those protections is honest and fulsome disclosure of one's financial affairs; Debtor has opted instead to continue his misguided efforts to hinder, defraud, and delay creditors by refusing to voluntarily disclose assets, choosing to spuriously mislabel debts in a naked effort to become eligible for Chapter 13, and generally continuing the imprudent courses of action that led up to the filing of this bankruptcy case. Movants submit that only conversion to Chapter 7 will enable anything remotely resembling the best interests of creditors to be realized.

33. A proposed form of Order is attached as **Exhibit 12.**

Wherefore, premises considered, Movants respectfully request that the Court a) convert this case to one under Chapter 7, and b) grant Movants such other and further relief to which they may show themselves justly entitled.

    Respectfully submitted,

    GRAVES, DOUGHERTY, HEARON & MOODY, P.C.
    401 Congress Avenue, Suite 2700
    Austin, TX 78701
    Telephone: 512.480.5620
    Facsimile: 512.480.5820

    By: /s/ *Brian T. Cumings*
        Brian T. Cumings
        State Bar No. 24082882
        bcumings@gdhm.com

    **ATTORNEYS FOR MOVANTS**

**CERTIFICATE OF SERVICE**

   I hereby certify that on the 24th day of January, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system for the United States Bankruptcy Court for the Southern District of Texas and mailed the same (including exhibits) to the parties listed below and (not including exhibits) to those on the creditor's matrix appended herewith:

| | |
|---|---|
| William E. Heitkamp<br>Office of Chapter 13 Trustee<br>9821 Kay Freeway<br>Ste 590<br>Houston, TX 77024 | Diogu Kalu Diogu II<br>4726 Gainsborough Dr.<br>Brookshire, TX 77423<br>Debtor (pro se) |
| Michael Glen Walker Sr.<br>Walker & Patterson<br>4815 Dacoma St.<br>Houston TX 77092<br>*Debtor's Counsel* | |

             /s/ *Brian T. Cumings*
             Brian T. Cumings