United States Bankruptcy Court
Southern District of Texas
**ENTERED**
August 25, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO: 21-33581** |
| **DIOGU KALU DIOGU, II,** | § | |
| | § | |
| **Debtor.** | § | |
| | § | |
| | § | **CHAPTER 7** |

# MEMORANDUM OPINION

Diogu Kalu Diogu, II ("Diogu") argues that this Court should reconsider and vacate a number of prior orders concerning the validity of the foreclosure on his home. The core issue concerns whether a recent Fifth Circuit decision demonstrates that the prior orders were in error based on *Houston Prime Invs., Ltd. v. Cmty. Loan Servicing, L.L.C.*, No. 24-20171, 2026 WL 507786 (5th Cir. Feb. 24, 2026). Because *Houston Prime* does not alter the prior conclusions, the Court will not vacate the prior orders.

Following an evidentiary hearing, Diogu argues that the August 3, 2016 Real Estate Extension Letter Agreement (the "Extension Agreement") did not suspend the limitations period because it failed to satisfy § 16.036 of the Texas Civil Practice and Remedies Code. ECF No. 480, case 21-33581 at 1. He contends that he did not properly acknowledge the Extension Agreement and that Green Bank, rather than Diogu, filed it in the real-property records. ECF No. 480, case 21-33581, at 1–2. He then argues that the lien, having not been extended, expired under § 16.035. ECF No. 480, case 21-33581 at 5.

The Court need not determine whether either a defective notarization or a defective filing caused the Extension Agreement to fail § 16.036's requirements. Under Texas common law, a valid extension

of a debt is effective between the parties notwithstanding § 16.036's requirements. *Davidson v. F.D.I.C.*, 44 F.3d 246, 254-55 (5th Cir. 1995).

## BACKGROUND

### A. THE NOTE, DEED OF TRUST, AND EXTENSION AGREEMENT

The dispute concerns a loan secured by real property located at 4726 Gainsborough Drive in Brookshire, Texas (the "Property"). ECF No. 152, 21-33581 at 1–2. On July 29, 2011, Diogu executed a $420,000.00 promissory note payable to Green Bank, N.A. (the "Note"). Ex. 10, ECF No. 468, case 21-33581 at 3. The Note was secured by a deed of trust on the Property (the "Deed of Trust"). The Note originally matured on August 3, 2016. Ex. 10, ECF No. 468, case 21-33581 at 3.

On August 3, 2016, Green Bank and Diogu entered into a Real Estate Extension Letter Agreement (the "Extension Agreement"). Ex. 2, ECF No. 468, case 21-33581 at 1. The Extension Agreement extended the maturity date of the Note to February 3, 2017. Ex. 2, ECF No. 468, case 21-33581 at 1. It bears signatures for both Green Bank and Diogu. Ex. 2, ECF No. 468, case 21-33581 at 1. At the July 31, 2026 hearing in this Court, Diogu testified that he had signed the Extension Agreement. Hr'g Recording at 12:01:10–12:01:20 p.m., ECF No. 471, case 21-33581. He challenged, however, its notarization.

The certificate of acknowledgment states that Diogu personally appeared before a notary on October 20, 2016 and acknowledged that he executed the Extension Agreement. Ex. 2, ECF No. 468, case 21-33581 at 2.

The Extension Agreement was recorded in the Fort Bend County real-property records on November 2, 2016 as Instrument No. 2016122950. Ex. 2, ECF No. 468, case 21-33581 at 3–5. The county clerk's receipt states that it was "Issued To: GREEN BANK NA." Ex. 2, ECF No. 468, case 21-33581 at 5.

### B. THE PRE-BANKRUPTCY DISPUTE AND TRANSFER OF THE LOAN TO LAKELAND

After the extended maturity date passed, Diogu and Green Bank began litigating Green Bank's right to enforce the loan and foreclose on the Property. ECF No. 28, case 21-33581 at 5.

Green Bank later merged with Veritex Community Bank. Ex. 10, ECF No. 468, 21-33581 at 4. In December 2019, Diogu, an affiliated entity, and Veritex entered into a settlement agreement that expressly referred to the Note, the Extension Agreement, and the Deed of Trust. Ex. 3. ECF No. 468, case 21-33581 at 1.

In December 2020, Veritex and Diogu entered into another Tolling Agreement. Ex. 10, ECF No. 468, 21-33581 at 4. That agreement again identified the Note, Extension Agreement, and Deed of Trust and provided that the period from December 16, 2020 through September 16, 2021 would not count toward certain limitations defenses. Ex. 4, ECF No. 468, case 21-33581 at 1–2.

On June 10, 2021, Veritex assigned its rights under the Note, Deed of Trust, and related loan documents to Lakeland West Capital 41, LLC. Ex. 10, ECF No. 468, case 21-33581 at 4. The assignment was recorded in the Fort Bend County real-property records. Ex. 10, ECF No. 468, case 21-33581 at 4. Veritex also executed an allonge making the Note payable to Lakeland. Ex. 10, ECF No. 468, case 21-33581 at 4.

Lakeland then scheduled a foreclosure. Ex. 10, ECF No. 468, case 21-33581 at 5. After Diogu unsuccessfully sought to stop the foreclosure in state and federal court, he filed this bankruptcy case on November 2, 2021, the same day the foreclosure was scheduled. ECF No. 1, case 21-33581. The automatic stay then stopped the foreclosure from proceeding.

Lakeland also filed Adversary Proceeding No. 22-03164 seeking declarations concerning the Note, Deed of Trust, and related claims. ECF No. 152, case 21-33581. In February 2023, the Court entered partial summary judgment for Lakeland. Ex. 9, ECF No 468, case 21-33581. The Court determined that Lakeland was the owner and holder of the debt, that the limitations period for the Note and Deed of Trust had not expired, that Lakeland was a senior secured creditor holding a valid lien on the Property, and that its allowed proof of claim was

satisfied by the June 7, 2022 nonjudicial foreclosure. Ex. 9, ECF No 468, case 21-33581 at 2.

### C. *HOUSTON PRIME* AND THE PRESENT DISPUTE

The present issue arose after the recent Fifth Circuit decision in *Houston Prime Invs., Ltd. v. Cmty. Loan Servicing, L.L.C.*, No. 24-20171, 2026 WL 507786 (5th Cir. Feb. 24, 2026). There, the note had a fixed maturity date, but foreclosure did not begin until more than four years after maturity. *Id.* at *1. The Fifth Circuit held that the foreclosure claim accrued when the note matured and that the lien and power of sale became void when the four-year limitations period expired. *Id.* at *2.

On July 20, 2026, on Diogu's multiple motions, the Court entered a Case Management Order setting an evidentiary hearing to determine whether *Houston Prime* requires the Court to amend, withdraw, or vacate any of its orders or judgments. ECF No. 461, case 21-33581 at 1. At the July 31 hearing, the Court admitted, among other things, the Extension Agreement, the Settlement Agreement, the Tolling Agreement, and several of the Court's prior orders. ECF No. 471, case 21-33581. The Court then ordered additional briefing concerning the validity and effect of the Extension Agreement's acknowledgment. ECF No. 471, case 21-33581.

The issue before the Court is whether *Houston Prime* requires any change to the Court's prior rulings because of the alleged defects in the Extension Agreement.

## DISCUSSION

Diogu's ultimate argument is that Lakeland has no rights in the Property. He contends that the lien became void under § 16.035 before Veritex assigned the loan to Lakeland. This argument relies on Diogu's claim that the Extension Agreement did not extend the lien because it failed to comply with § 16.036. He identifies two alleged defects in the Extension Agreement: (1) he did not personally appear before the notary who acknowledged the Extension Agreement, and (2) Green Bank, rather than Diogu, filed the Extension Agreement in the real-property

records. ECF. No. 480 at 3–4. According to Diogu, those defects prevented the Extension Agreement from satisfying § 16.036. He therefore argues that the original maturity date remained controlling, the four-year limitations period expired, the lien became void under § 16.035(d), and Lakeland later acquired no enforceable lien through the assignment.

The Court need not determine whether either alleged defect caused the Extension Agreement to fail § 16.036's requirements. Even assuming that it did, Texas law recognizes that an otherwise valid extension of an unbarred debt is effective between the parties and extends the lien as between them. *Davidson v. F.D.I.C.*, 44 F.3d 246, 254–55 (5th Cir. 1995).

**THE EXTENSION AGREEMENT REMAINED EFFECTIVE BETWEEN THE PARTIES UNDER TEXAS COMMON LAW**

Diogu contends that the alleged defects in acknowledgment and filing prevented the Extension Agreement from satisfying § 16.036 and therefore prevented it from extending the lien. Texas law does not support that conclusion.

The absence of a valid acknowledgment does not ordinarily invalidate an instrument between the parties who executed it. In *Haile v. Holtzclaw*, the Texas Supreme Court held that, as between a grantor and grantee, a deed remains valid notwithstanding a defective acknowledgment. 414 S.W.2d 916, 928. The Texas Supreme Court similarly held that a defective acknowledgment of a deed of trust "did not render it void and unenforceable as between the parties to the transaction." *Diamond v. Borenstein*, 414 S.W.2d 454, 455.

In *Morris v. Wells Fargo Bank, N.A.*, the court rejected the argument that even fraud sufficient to overcome the validity of a certificate of acknowledgment necessarily renders the underlying instrument void. 334 S.W.3d 838, 849 (Tex. App. 2011) ("Morris cites no authority, and we have found none, supporting her assertion that where clear and unmistakable proof of fraud by a notary overcomes the validity

of a certificate of acknowledgment on a deed, such deed is thereby 'void.'").

Diogu acknowledges signing the Extension Agreement. His challenge concerns the acknowledgment and recording of the Agreement, not whether he executed the Agreement itself.

Texas common law holds that extension agreements are effective between the parties, without the necessity of the formalities of a notarization or of a recording. *Davidson*, 44 F.3d at 254 ("[A]s between the parties, and those holding under them in subordination to the mortgage, informal, unrecorded extensions of the debt, not meeting the standards of section 16.036, suffice also to extend the lien.").

Diogu does not address the common law. Instead, Diogu argues that the extension agreement is invalid under § 16.036 of the Texas Civil Practice and Remedies Code.

Section 16.036 provides that an extension agreement meeting its requirements may suspend the four-year limitations period applicable to a real-property lien. TEX. CIV. PRAC. & REM. CODE § 16.036. Section 16.037 protects certain bona fide purchasers, lienholders, and lessees who lack actual notice of an extension before it is acknowledged, filed, and recorded. *Id.* § 16.037. TEX. PROP. CODE § 13.001(b) reflects the same distinction between an instrument's enforceability between parties and the consequences of recordation as to others: an unrecorded instrument may remain binding on a party to the instrument and on a subsequent purchaser with notice.

It is certainly true that § 16.036(b) requires an extension agreement to be signed, acknowledged, and filed in order to suspend limitations under that statute.

*Houston Prime* never addresses the notarization issue under Texas common law or under § 16.036. However, the issue has been thoroughly addressed by both the Fifth Circuit and by Texas Courts.

The uniform result is that an extension agreement is binding between the parties.[1]

In *Davidson v. F.D.I.C.*, applying Texas law, the Fifth Circuit explained that as between the parties and those holding under them in subordination to the mortgage, an informal or unrecorded extension of an unbarred debt extends the statute as to the unrecorded lien under Texas common law. 44 F.3d 246, 254–55 (5th Cir. 1995). Texas law protects innocent third parties from unrecorded extensions, but those protections do not displace the longstanding rule governing the rights of the parties themselves. *Id.* As between the parties, § 16.036 did not render an otherwise valid extension ineffective between the obligor and the creditor.

*Berry v. Fed. Nat'l Mortg. Ass'n & Seterus, Inc.* involved an argument similar to Diogu's. *Berry* involved borrowers who agreed, before limitations expired, to toll the foreclosure limitations period during the pendency of an appeal. *Berry v. Fed. Nat'l Mortg. Ass'n & Seterus, Inc.*, No. 3:15-CV-3279-G-BN, 2015 WL 9598894, at *2, *4 (N.D. Tex. Dec. 14, 2015), report and recommendation adopted, 2016 WL 54334 (N.D. Tex. Jan. 4, 2016). The borrowers later argued that the agreement was ineffective under § 16.036 because they had not signed and acknowledged an agreement satisfying the formalities of a real-property conveyance and because the agreement was not recorded until after the original limitations period had expired. *Id.* at *4. The court rejected that argument, holding that even if the agreement failed to satisfy § 16.036's requirements, it remained enforceable between the

[1] The Court does not address whether a defective notarization would allow a Trustee to invoke the rights of a bona fide purchaser under Texas law. 11 U.S.C. § 544. In a post-trial brief filed by Lakeland, Lakeland argues that the State Court (prior to removal) conducted a factual inquiry regarding the notarization. The filed transcript reflects that the notary presented her records reflecting Diogu's signature did occur as stated in the notarization. Following removal, the Bankruptcy Court, having been presented with the State Court transcript, determined that Lakeland had a valid lien and that the statute of limitations had not expired. *See* Ex. 1, ECF 481, case 21-33581, page 13; *see also* Ex. 9, ECF 468, case 33581 at 2. No party presently asks the Court to determine the Trustee's rights under § 544, and the Court does not reach that issue.

parties under *Davidson*. *Id.* at *4–5. Like the borrowers in *Berry*, Diogu does not dispute that he entered into the Extension Agreement before limitations expired; he instead argues that defects in acknowledgment and recording prevent the Agreement from extending the lien.

Lakeland's status as an assignee does not change the result. Texas law recognizes the general rule that "[a]n assignee stands in the shoes of his assignor." *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 572 (Tex. 2001). *Davidson* establishes that the lien remained effective between Diogu and the lender notwithstanding the alleged § 16.036 defects. Because the lien remained in existence when Veritex assigned the loan documents, Veritex had a lien to transfer. Under *Holy Cross*, Lakeland acquired the rights held by Veritex, including the existing lien.

*Houston Prime* does not require a different result. There, the parties did not dispute that the note matured on February 1, 2014, and no extension agreement was at issue. *Houston Prime.*, No. 24-20171, 2026 WL 507786, at *2. The Fifth Circuit held that, because the four-year limitations period expired in 2018, § 16.035(d) rendered the lien and power of sale void. *Id.* The issue before the court was whether § 16.069 could revive a foreclosure claim based on that already-void lien. *Id.* at *2–3. The Fifth Circuit held that it could not. *Id.* at *3.

*Houston Prime* addresses the consequence of allowing the § 16.035 limitations period to expire; it does not hold that an otherwise valid extension agreement between the parties is ineffective.

*Houston Prime* does not over-ride the long-standing decision of the prior Fifth Circuit panel in *Davidson*. *Davidson* addresses the right question and controls the issue presented here. *Houston Prime* presupposes that the lien has already become void. *Houston Prime*, No.

24-20171, 2026 WL 507786, at *2 ("CLS cannot foreclose on a lien that no longer exists."). Diogu has not established that predicate here.

## CONCLUSION

The Extension Agreement remained effective between Diogu and Green Bank. It extended the debt and lien. Those rights later passed to Veritex and were assigned to Lakeland. The Court affirms the validity of the foreclosure.